JOSEPH H. MAILHOUSE AND JULIUS MICHELIS *vs.* JAMES FRAZIER.

SURRENDER: SUBSTITUTION: FIERI FACIAS AFTER INSUFFICIENCY OF PROCEEDS OF SALE FOR PAYMENT OF PURCHASE MONEY: PRACTICE IN EQUITY.—J. F. having sold certain real to J. J. M., and received therefor in cash, one-sixth of the purchase money, and the notes of J. J. M., payable in one, two and three years for the balance thereof, executed to him his bond for the conveyance of the premises to him upon payment of said balance of purchase money and interest, and all taxes, ground-rents, &c. J. J. M. afterwards sold to J. M. all his interest in the said real estate, and the said three parties joined in the execution of a deed reciting the original sale, and the sale from J. J. M. to J. M., J. F.; the said J. F. thereby agreeing to surrender to J. J. M. his three promissory notes, and to accept in lieu thereof, the three promissory notes of J. M., to be drawn as of the same date, for the same amounts and payable at the same periods. The notes not being paid at maturity, the real estate was sold under a decree in equity against J. J. M. and J. M., for the payment of the balance of the purchase money, and the net proceeds of sale proving insufficient for that purpose, J. F. filed his petition for a writ of *fieri facias* against the said defendants, which was ordered to be issued as prayed. Whereupon the defendants appealed.—HELD:

1st. That the surrender of the security given by J. J. M. was a surrender of the debt represented by it, and the acceptance of the notes of J. M. was a substitution of one purchaser for another.

2nd. That J. J. M. was not liable for any part of the purchase money after the compliance of the parties with the agreement set out in their deed.

APPEAL from the Circuit Court of Baltimore city:

The bill of complaint filed by the present appellee states, in substance, that on the the 20th April, 1859, he agreed to sell a parcel of land in the city of Baltimore to the defendant, Mailhouse, for the sum of $3,500, of which the sum of $500 was to be paid in ready money, and the residue with interest in one, two and three years from the day of sale; that the cash payment was made and the notes of Mailhouse

were given to the complainant as agreed upon, and the said property was thereupon delivered into the possession of Mailhouse; and the complainant also gave him a bond for the conveyance of the premises to him, on payment of the entire amount of purchase money.

The bill then states that Mailhouse, pretending to become dissatisfied with his contract with the complainant, on the 23rd January, 1863, conveyed his interest in said premises to his brother-in-law, the defendant, Michelis; the complainant "joining as a party thereto, in order to signify his assent to said transfer, and at the request of, and in order to accommodate said Mailhouse, agreeing to return to him the three notes the complainant had received from him as security for the unpaid purchase money, and in lieu thereof to receive the notes of the said Michelis drawn by him, as of the same date, for the same amounts, and payable at the same periods as the notes so returned as aforesaid to said Mailhouse."

But the bill further avers, that in returning said notes to said Mailhouse, the complainant had no intention to release him from his responsibility to the complainant under his said contract for the payment of the said purchase money, but still regarded him as liable therefor; that one of said notes so received from the said Michelis has become due, and was dishonored, and remains unpaid; that Michelis is utterly destitute of means or resources of any kind; that Mailhouse and Michelis were both aware of the inability of Michelis to pay said notes at maturity, and that said assignment was by the fraudulent combination of the two designed and expected by them to exempt Mailhouse from the responsibility incurred by him under his contract with the complainant by artfully and fraudulently substituting the worthless notes of Michelis for those of Mailhouse.

The bill insists, that notwithstanding said assignment to Michelis, and the surrender to Mailhouse of the notes given

by him to the complainant, he is still liable for the payment of the purchase money yet due, and that the same is a lien on said premises, and it therefore prays that the defendant may be decreed to pay to the complainant the sum of $3,000 yet due, with interest thereon, and in default thereof, that the premises be sold, &c.

Exhibit A, filed with the bill, is an office copy of the bond of conveyance given by complainant to Mailhouse.

Exhibit B is an office copy of the deed of assignment from Mailhouse to Michelis. The complainant is a party to the deed. And it is therein cited, that "the said Michelis has agreed to assume the payment of the balance of the purchase money, and interest remaining due and unpaid, in consideration whereof, the said complainant hath agreed to surrender to the said Mailhouse the three promissory notes now in his possession, as security for the payment of the said purchase money and interest, and to accept in lieu thereof the three promissory notes of the said Michelis, to be drawn as of the same date for the same amount, and payable at the same periods as the three notes so surrendered as aforesaid."

Interlocutory decrees having been entered against the defendants, the complainant filed and returned under a commission to take testimony, three several promissory notes of the said Michelis, dated respectively on the 20th April, 1859, for the sum of $1,000, and payable with interest in one, two and three years after date. And thereupon, on the 23d May, 1863, a decree was passed, directing that the defendants forthwith pay or bring into this Court to be paid to the complainant, the sum of $3,000, with interest and costs, and in default thereof, that the premises aforesaid be sold.

The property having been sold, and yielding less than the sum decreed to the complainant, he filed his petition for a writ of *fieri facias* against the defendants, which was

ordered to be issued as prayed. The defendants thereupon prayed an appeal from the decree.

The cause was argued before Bowie, C. J., and Golds-borough, Cochran and Weisel, J.

*Thos. S. Alexander and O. Hack*, for the appellants:

1st. There is no evidence of combination between the defendants, or of any fraud or contrivance on the part of either of them to mislead the complainant.

2nd. In the absence of evidence of fraud, it must be assumed that the agreement for the substitution of Michelis as purchaser, in the stead of Mailhouse, was entered into by the parties in good faith, and with their eyes open to the consequences. And that the agreement, as averred in the bill, and as endorsed by the recital in the deed of assignment, to which all were parties, is simply and plainly that Michelis should succeed to the right of Mailhouse as purchaser, and as such should become debtor to Frazier for the purchase money yet unpaid. Frazier surrendered the notes of Mailhouse in consideration of other notes for a like amount, which he received from Michelis, and in consideration of the surrender of the notes which he had originally given to Frazier, he transferred to Michelis all his interest in the property originally purchased. It is not pr tended, that in point of fact, the parties agreed that notwithstanding the assignment and the substitution of the notes of Michelis for those of Mailhouse, the latter was to remain the debtor of Frazier. On the contrary, it is expressly averred in the bill, that the defendants designed and expected that the new arrangement would exempt Mailhouse from his responsibility under the original contract. And although it is alleged that the complainant had no intention to release Mailhouse from his responsibility, it is not pretended that his claim or purpose, or wish to hold

Mailhouse bound, was ever communicated to the defendants. It is submitted, therefore, as the conclusion of the law under the circumstances, that the surrender of the notes of Mailhouse by Frazier, in exchange for the notes of Michelis for like amounts, and his consent to the assignment by Mailhouse to Michelis, operated as an extinguishment of all obligation on the part of Mailhouse to Frazier. *Berry vs. Griffith,* 10 *Md. Rep.,* 27. *Creeger vs. Smith,* 7 *Md. Rep.,* 260. 5 *Md. Rep.,* 396. 4 *Wash. C. C. Rep.,* 98, 271. 2 *Starkie,* 178. 2 *B. & Ald.,* 210. 4 *Espinasse,* 89.

2. The legal remedy of the complainant against Michelis was complete and adequate, and no circumstance is stated to warrant a personal decree in equity against him. He was not a party to the original contract, nor is there any evidence of his indebtedness save only such as is furnished by his promissory notes.

3. The bill was filed on the 26th of June, 1860; at this time one of Michelis' notes had matured. The others were still running, and no action at law could have been brought for the recovery of the money secured by them. Conceding, then, that the complainant was entitled to be relieved in equity, in respect of the first note of the series, the decree is clearly wrong in awarding payment of the aggregate of the sums due on all the notes. *Chalmers vs. Chambers,* 6 *H. & J.,* 29. *McDowell vs. Goldsmith,* 6 *Md. Rep.,* 319.

4. The decree is wrong in awarding payment to be made by the defendants jointly. As the decree now stands either one of the defendants who shall pay off the entire debt will be entitled to contribution from his co-defendant. But the obligation of the defendants was not joint. If we concede that the agreement of substitution did not release Mailhouse from his original liability to Frazier it is certain that as between themselves Michelis had assumed the position of debtor, and Mailhouse that of surety or guarantor, and that

in the event of a satisfaction of the debts due to Frazier by Mailhouse, the latter ought to be entitled to a recovery over against Michelis.   But this remedy over is negatived by the decree which establishes the joint obligation of both defendants.

*C. L. L. Leary,* for the appellee.

The appellee insists upon the liability of the defendant, Mailhouse, under the original contract of sale and bond of conveyance, notwithstanding the surrender to him by the appellee of Mailhouse's notes, and the acceptance by the appellee of the notes of Michelis.

1st. Because such surrender could not release Mailhouse from liability unless the deed of assignment to Michelis contained an express agreement by the appellee to accept the notes of Michelis in satisfaction and extinguishment of Mailhouse's liability.   No such agreement appears.   The transaction operated and was intended as a mere exchange of securities.   See *Clopper's Admr. vs. Union Bank,* 7 *H. & J.*, 99.   *Bowers' Admx. vs. State,* 7 *H. & J.*, 35.   *Glenn vs. Smith,* 2 *G. & J.*, 508 *to* 512.   *Maryland & New York Coal Co. vs. Wingert,* 8 *Gill,* 177.   *Yates vs. Donaldson,* 5 *Md. Rep.* 396, 401.

2nd. The appellee will further contend that the decree in in this cause operated *in personam* as well as *in rem.,* and that, therefore, the proceeds of sale of the property bound by the decree, having proved insufficient to satisfy the appellee's claim, he was entitled to an execution in the nature of a writ of *fi. fa.* against the defendants.   The decree to be effective is susceptible of no other construction.   See 1 Md., Code, Art. 16, sec. 118, p. 96.   Act of Assembly 1785, ch. 72, sec. 25.   Act of Assembly 1818, ch. 193, sec. 4.   *Alexander's Ch. Prac.,* 201.

Bowie, J., delivered the opinion of this Court:

The final decree in this case required the defendants, now appellants, to pay or bring into Court, the sum of $3000 (with interest from the 20th of April, 1859, and costs of suit,) in default whereof, on or before the 3rd of June, 1863, then the premises mentioned in the bill and proceedings were decreed to be sold.  The money being unpaid, the property was sold by the trustee for $2500, which being reduced by commissions, costs and expenses, left due the complainant the sum of $1463.54, for which he prayed a writ of *fieri facias* might be issued, which was ordered, and the defendants afterwards prayed an appeal from the decree against them and filed their bond.

The appellants' solicitors do not controvert the right of the complainant to a sale of the premises, but deny simply his right to a personal decree against them, and claim a reversal of so much of the decree:

1st. Because there was no evidence of fraud or combination between the defendants to mislead the complainant.

2nd. Because the original contract between the defendant, Mailhouse, and the complainant was abandoned and Michelis substituted in the place of Mailhouse, whereby the latter was released and discharged from all liability for the property in question.

The final decree was passed upon the return of a commission issued after interlocutory decrees for want of answers against both respondents.

The evidence filed under this commission consists solely of three promissory notes of Michelis, dated the 20th of April, 1859, at one, two and three years respectively, for $1000 each, with the notarial protest of the first of said notes.  Neither of the complainant's exhibits, the orignal contract marked A, or the substituted contract marked B, were filed with, or proved before the Court, but as they

have been treated by the counsel as evidence in the case, they will be considered by this Court as in, without exception, particularly as the whole controversy turns upon the relation which these agreements bear to each other.

Exhibit A, filed with the complainant's bill and referred to therein as a part thereof, is a bond of conveyance dated the 20th of April, 1859, from James Frazier, the complainant, to Joseph T. Mailhouse, one of the defendants and appellants, reciting that the complainant had sold and agreed to convey to Mailhouse or his personal representatives, certain leasehold property therein described, in consideration of the sum of $3500, $500 of which had been paid in cash and the residue secured by three promissory notes of Mailhouse of even date therewith, each for the sum of $1000, bearing interest, and payable at one, two and three years, with a condition that upon payment of the residue of the purchase money and interest, and all taxes and ground rent thereafter to become due by said Mailhouse, the complainant would transfer and convey the same to Mailhouse clear and discharged of all incumbrances by the said Frazier or his representatives, and until default made in payment of the same, would permit Mailhouse to hold, possess and enjoy the same.

Exhibit B is a deed dated the 23rd of January, 1860, signed by Joseph T. Mailhouse, Julius Michelis and James Frazier, the complainant, reciting the execution of the foregoing bond of conveyance by Frazier to Mailhouse; and " whereas, the said Joseph T. Mailhouse has for a valuable consideration, sold to the above named Julius Michelis, all his, the said Mailhouse's equitable interest, right and title acquired under the said contract or bond of conveyance; and whereas, the said Michelis has agreed to assume the payment of the balance of the purchase money and interest remaining due and unpaid; in consideration whereof, the

said James Frazier hath agreed to surrender to the said Mailhouse the three promissory notes now in his possession, as security for the payment of said purchase money and interest, and to accept in lieu thereof, the three promissory notes of said Michelis, to be drawn as of the same date for the same amounts, and payable at the same periods, as the three notes so surrendered as aforesaid." In consideration of the premises and one dollar, the said Mailhouse transferred and assigned to the said Michelis, all the interest and estate, etc., of the said Mailhouse in and to all the lots mentioned and described in the bond of conveyance aforesaid.

The notes of Michelis filed under the commission, bear date the 20th of April, 1859, although executed, in fact, on or after the indenture of the 23rd January, 1860.

The complainant, after alleging the execution of the aforesaid instruments, and the facts recited therein, avers that he joined in the deed to signify his assent to the transfer, at the request of, and to accommodate Mailhouse, agreeing to return to him the three notes he had received from him, as security for the unpaid purchase money, and in lieu thereof to receive the notes of Michelis drawn by him of the same date for same amounts, and payable at the same periods as the notes so returned as aforesaid, but in returning said notes to Mailhouse he had no intention to release him from his responsibility therefor under his said contract of purchase, for the payment of said purchase money, but still regarded him as responsible therefor.

He charges combination between Mailhouse and Michelis, to substitute the latter, who was worth nothing, for the former, who was responsible, and thus avoid the personal liability altogether.

There being no evidence of fraud, or other facts except those above mentioned, we are left to infer the intention of the parties from their acts.

The Balto. & Ohio R. R. Co. *vs.* Green.

If the suit was at law, instead of in equity, against Mailhouse, for the balance of the purchase money, it would be left to the jury to find whether, in accepting the notes of Michelis for those of Mailhouse, under the circumstances, the former contract was abandoned. In *Yates vs. Donaldson*, it was held to be well settled, that the acceptance of a security or undertaking of equal degree, does not extinguish the former debt, unless it be received in satisfaction, or be intended as an abandonment of the remedy on the first contract. The same doctrine was announced in *Berry vs. Griffith, et al.*, 10 *Md. Rep.*, 31. One of the instructions in the former case, which this Court said should have been granted was, the plaintiff was entitled to recover, "unless they (the jury) should believe that the giving and taking of the notes was intended by and between the parties as an abandonment by Yates of his original claim against the defendants jointly." 5 *Md. Rep.*, 391.

It was held by this Court, in the case of *Creager vs. Link*, that where a new note, with collateral security, was deposited by the defendant with the witness, in satisfaction of a note held by the plaintiffs, to be delivered by the witness to the plaintiffs upon surrender of the old note, pursuant to a previous agreement between the defendant and plaintiffs, and the plaintiffs afterwards offered to surrender the old note, but the witness then refused to give him the new note, because his authority had been in the meantime countermanded. The plaintiffs could not recover on the old note, but had his remedy in trover for the new security—the former being satisfied. 7 *Md. Rep.*, 260. In this case, it seems to us, the surrender of the security given by Mailhouse was a surrender of the debt represented by it, and the acceptance of the notes of Michelis was a substitution of one purchaser for another. One-sixth of the purchase money having been

paid by Mailhouse, Frazier might well have relied on his vendor's lien as security for the balance.

The transaction is, upon any other hypothesis, inexplicable, and without motive or mutuality, unless the first purchaser was discharged thereby. The first purchaser parts with his interest and control over the property—can no longer insist upon the conveyance of it to himself; loses all advantage of prospective enhancement, all means of indemnity against loss, and yet remains primarily liable. Such a construction would be contrary to all principles of equity.

It results, from our view of these facts, that the appellant, Mailhouse, was not liable for any part of the purchase money after the compliance of the parties with the agreement set out in their deed of the 23rd January, 1860. The decree being against Mailhouse and Michelis jointly was therefore erroneous, and must be reversed as against the former. Although the bill was filed before all the notes of Michelis matured, yet, as in case of a mortgage, to secure a debt payable in instalments, the decree upon the forfeiture by non-payment of the first, may be made to stand, as security for the residue in case of subsequent defaults; so here, the whole money having since become due, the decree will not be modified in that respect, but the case will be remanded for such proceedings as may be necessary to conform to the opinion of this Court. Decree below reversed, with costs of this Court to the appellants, and cause remanded for further proceedings.

*Decree reversed, with costs in this*
*Court to the appellants, and cause remanded.*

(Decided June 15th, 1866.)